1

2

3

**UNITED STATES DISTRICT COURT**

4

**NORTHERN DISTRICT OF CALIFORNIA**

5

**SAN JOSE DIVISION**

6

7

ZL TECHNOLOGIES, INC.,

Case No.  25-cv-00808-BLF

8

Plaintiff,

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, STAY, OR TRANSFER CASE, AND TRANSFERRING CASE TO THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO**

9

v.

10

WESTERN & SOUTHERN FINANCIAL GROUP, INC.,

11

Defendant.

12

[Re: ECF No. 15]

13

Before the Court is Defendant Western & Southern Financial Group, Inc.'s ("W&S") motion

14

to dismiss, stay, or transfer this case pursuant to the first-to-file rule in light of an earlier filed case

15

in the U.S. District Court for the Southern District of Ohio. ECF 15 ("Mot."). Plaintiff ZL

16

Technologies, Inc. ("ZL") filed an opposition. ECF 24 ("Opp."). W&S filed a reply. ECF 25

17

("Reply"). The Court deems that the matter is suitable to be determined without oral argument and

18

hereby VACATES the hearing on July 23, 2025.

19

For the reasons stated below, the Court GRANTS W&S's motion to transfer the case,

20

DENIES W&S's motion to dismiss and motion to stay AS MOOT, and TRANSFERS this case to

21

U.S. District Court for the Southern District of Ohio.

22

**I.    BACKGROUND**

23

**A.  The Ohio Action**

24

On December 26, 2014, W&S and ZL entered into a master software license agreement (the

25

"Agreement") and a corresponding statement of work (the "SOW"). ECF 15-1, Declaration of Brent

26

Craft ("Craft Decl."), Ex. B, ¶ 3. W&S and ZL had a dispute about their rights and obligations under

27

the Agreement and the SOW. Craft Decl., Ex. C, Ex. 1; Craft Decl., Ex. D, Ex. 3. On August 2,

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    2024, Mike Vogel, a W&S VP, emailed ZL requesting the companies "amicably maintain the

2    existing business relationship until the end of the current contract term in March of 2025." Craft

3    Decl., Ex. D, Ex. 3. This request sought to "avoid the time and costs associated with any

4    disagreements over [the companies'] respective contractual obligations." *Id.* On November 15,

5    2024, W&S sent ZL an official notice (the "Termination Notice") terminating the Agreement before

6    it renewed for another year. Craft Decl., Ex. E, ¶ 4.

7        On November 19, 2024, ZL sent W&S a Preservation of Evidence Notification through its

8    counsel. Craft Decl., Ex. E, Ex. 2. In the notification, ZL stated that it anticipated filing a lawsuit

9    against W&S and requested that W&S "take all reasonable steps to preserve documents, tangible

10   things, and electronically stored information" potentially relevant to the anticipated lawsuit under

11   California evidence law. *Id.*

12       On November 22, 2024, W&S filed a lawsuit in the U.S. District Court for the Southern

13   District of Ohio (the "Ohio Action"). Craft Decl., ¶ 3 & Ex. A. In the Ohio Action, W&S brought

14   two claims for relief: 1) declaratory judgment pursuant to 28 U.S.C. § 2201, claiming that ZL had

15   breached the Agreement and SOW, that W&S had not breached the Agreement, and that W&S need

16   not pay any further amounts to ZL; and 2) breach of contract. Craft Decl., Ex. A at 6-7.

17       **B.  The California Action**

18       On January 23, 2025, ZL filed the above captioned action in the Northern District of

19   California ("California Action"). *See* ECF 1, Complaint ("Compl."). In the California Action, ZL

20   alleges that W&S exceeded the 5,000 perpetual user licenses it had purchased under the Agreement.

21   *Id.* ¶¶ 9, 14. ZL further alleges that ZL had performed all duties required by the Agreement. *Id.* ¶

22   18. In the Complaint, ZL asserts the following claims: 1) breach of contract against W&S for

23   beaching the Agreement, Compl. ¶¶ 8-19; and 2) Reasonable Value of Goods, seeking payment for

24   the reasonable value of use that exceeded W&S's purchased licenses under the Agreement, Compl.

25   ¶¶ 20-24.

26   **II.   LEGAL STANDARD**

27       The first-to-file rule is "a judicially created doctrine of federal comity, which applies when

28   two cases involving substantially similar issues and parties have been filed in different districts." *In*

1   *re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (internal quotation marks and citations omitted).

2   "Under that rule, the second district court has discretion to transfer, stay, or dismiss the second case

3   in the interest of efficiency and judicial economy." *Id.* at 1051-52 (internal quotation marks and

4   citation omitted). "When applying the first-to-file rule, courts should be driven to maximize

5   economy, consistency, and comity." *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d

6   1237, 1240 (9th Cir. 2015) (internal quotation marks and citation omitted).

7          A district court deciding whether to apply the first-to-file rule "analyzes three factors:

8   chronology of the lawsuits, similarity of the parties, and similarity of the issues." *Id.* Even if those

9   factors are satisfied, a district court may exercise its discretion to decline to apply the first-to-file

10  rule. *See Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). "The

11  circumstances under which an exception to the first-to-file rule typically will be made include bad

12  faith, anticipatory suit, and forum shopping." *Id.* (internal citations omitted).

**III.   DISCUSSION**

**A.   The Relevant Factors Favor Application of the First-to-File Rule.**

15         A court may apply the first-to-file rule "when a complaint involving the same parties and

16  issues has already been filed in another district." *Kohn*, 787 F.3d at 1240 (internal citations omitted).

17  The applicability of the first-to-file rule is analyzed under three factors: 1) chronology of the

18  lawsuits, 2) similarity of the parties, and 3) similarity of the issues. *Id.* On the third factor, "[t]he

19  issues in both cases also need not be identical, only substantially similar." *Id.*

20         W&S argues that the first-to-file rule applies because it filed first, the parties in both the

21  Ohio Action and the California Action are the same, and the issues and claims are the same in both

22  actions. Mot. at 7-8. ZL does not dispute that the three factors favor applying the first-to-file rule.

23  *See* Opp. at 9-18.

24         The Court finds all three factors favor application of the first-to-file rule. As to the first

25  factor, chronology of the lawsuits, the Ohio Action was filed first on November 22, 2024, and the

26  California Action was filed sixty-two days later on January 23, 2025. *See* Craft Decl. at Ex. A.;

27  Compl. at 5. As to the second factor, similarity of the parties, both ZL and W&S are parties in both

28  the Ohio Action and the California Action. *Compare* Compl. at 1 *with* Craft Decl. at Ex. A. As to

*United States District Court*
*Northern District of California*

3

United States District Court
Northern District of California

1    the third factor, similarity of the issues, the Court finds that both actions involve the parties'

2    obligations and performance under the Agreement. *Compare* Compl. ¶ 17 (alleging W&S "has

3    breached the contract by using the software in excess of the number of licenses purchased") *with*

4    Craft Decl. at Ex. A. ¶ 1 ("ZL now claims that it is entitled to additional payment from [W&S]

5    because [W&S] purportedly over licensed the software.").

6           The Court is also unpersuaded by ZL's argument that it is the "natural plaintiff." Opp. at 6,

7    13, 18. A "natural plaintiff" is the party who raises "the affirmative claim." *FCE Benefits Adm'rs,*

8    *Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-CV-01160-JST, 2016 WL 4426897, at *2 (N.D.

9    Cal. Aug. 22, 2016). Although it is true that W&S terminated the Agreement and ZL claims W&S

10   improperly used more licenses than it paid for, Compl. ¶ 14, W&S also alternatively alleges ZL

11   breached the Agreement by selling software that never worked. Ohio Action Compl. ¶¶ 19, 23. ZL

12   also suggests that the Ohio Action is "duplicative and wrongly filed." Opp. at 13. ZL's argument

13   that it is the "natural plaintiff" is simply not persuasive in this situation.

14          For the above reasons, the Court finds the first-to-file rule applies.

15                **B.  No Discretionary Exceptions to the First-to-File Rule Apply.**

16          Even when the three factors discussed above favor application of the first-to-file rule, a

17   district court may decline to apply the rule based on equitable considerations. *See Alltrade*, 946 F.2d

18   at 628. Such considerations include anticipatory suits, forum shopping, or bad faith. *Id.* "Other

19   circumstances may also warrant a rejection of the first-to-file rule, such as factors involving

20   convenience to the parties or sound judicial administration." *Power Integrations, Inc. v. ON*

21   *Semiconductor Corp.*, No. 16-CV-06371-BLF, 2017 WL 1065334, at *3 (N.D. Cal. 2017). But the

22   first-to-file rule "should not be disregarded lightly." *Kohn*, 787 F.3d at 1239 (internal citations

23   omitted). A district court has discretion to "weigh the facts and conclude that the rule should apply."

24   *Alltrade*, 946 F.2d at 628. Ultimately, "[t]he most basic aspect of the first-to-file rule is that it is

25   discretionary." *Id.*

26          W&S argues that the Ohio Action is not an anticipatory suit, that it was not forum shopping,

27   and that it did not act in bad faith. Mot. at 9-14. ZL argues that the first-to-file rule should not apply

28   because the Ohio Action is an anticipatory lawsuit, W&S is forum shopping by filing the Ohio

4

United States District Court
Northern District of California

1    Action, and the Ohio Action was filed in bad faith. Opp. at 14-18.

2                    **1.  Anticipatory Suit and Forum Shopping**

3    Courts may decline to adopt the first-to-file rule where there is evidence that the first-filed

4    action was anticipatory. *Kohn*, 787 F.3d at 1240 (internal citations omitted). "Anticipatory suits are

5    disfavored because they are aspects of forum-shopping." *Alltrade*, 946 F.2d at 628 (citation

6    omitted). "A suit is 'anticipatory' for the purposes of being an exception to the first-to-file rule if

7    the plaintiff in the first-filed action filed suit on receipt of specific, concrete indications that a suit

8    by the defendant was imminent." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp.

9    2d 949, 960 (N.D. Cal. 2008) (internal citations omitted).

10    W&S argues the Ohio Action is not an anticipatory suit because "ZL never provided specific,

11    concrete indications that a suit against W&S was imminent." Mot. at 9. ZL argues that the Ohio

12    Action was an anticipatory suit amounting to forum shopping. Opp. 14. ZL argues that the

13    Preservation of Evidence Notification on November 22, 2024 served as concrete notice of an

14    imminent lawsuit because it presented the basis and jurisdiction of the instant action. *Id.* In the

15    Preservation of Evidence Notification, ZL through its counsel notified W&S that ZL "anticipate[d]

16    filing a lawsuit in which W&S will be named as a defendant" because W&S's total users "far

17    exceed[ed] the user licenses [W&S] purchased." Craft Decl., Ex. E, Ex. 2.

18    However, upon review of the preservation notice, the Court concludes that ZL's Preservation

19    of Evidence Notification at best showed the possibility of a legal action at some undefined time. *See*

20    *id.* The Court finds that the Preservation of Evidence Notification failed to provide W&S with

21    specific, concrete indications that suit was imminent. Indeed, ZL did not file the California Action

22    until January 23, 2025, sixty-two days after W&S filed the Ohio Action on November 22, 2024. *See*

23    Compl.; Craft Decl. Ex. A. Because ZL did not affirmatively state that it would initiate a lawsuit

24    against W&S, the Court finds that the Preservation of Evidence Notification failed to indicate that

25    a lawsuit by ZL was imminent. *See W. Pac. Signal, LLC v. Trafficware Grp., Inc.*, No. 18-CV-

26    02307-LB, 2018 WL 3109809, at *5 (N.D. Cal. June 25, 2018) (holding settlement letter suggesting

27    the possibility of legal action at some undefined point "is not equivalent to an imminent threat of

28    litigation."); *Sony Computer Ent. Am. Inc. v. Am. Med. Response, Inc.*, No. C06 06603 CW, 2007

1    WL 781969, at *3 (N.D. Cal. Mar. 13, 2007) (holding that a letter stating an enclosed complaint

2    "may be filed" after ten days did not establish that a lawsuit was imminent, especially as no lawsuit

3    was filed after the deadline).

4         Additionally, W&S had pre-existing motive to sue ZL before receiving the Preservation of

5    Evidence Notification. The Court notes that W&S asserted a breach of contract claim against ZL in

6    the Ohio Action. Specifically, in the Ohio Action, W&S alleges that ZL failed "to perform under

7    the Agreement and SOW" and charged hefty maintenance fees "for defective software." Craft Decl.,

8    Ex. B, ¶ 27; *see Bryant v. Oxxford Exp., Inc.*, 181 F. Supp. 2d 1045, 1049 (C.D. Cal. 2000) (finding

9    no anticipatory suit because Plaintiff had motive for suit before receiving a letter from the Defendant

10   declaring a contract breach).

11        The Court is also unpersuaded by ZL's argument that the Ohio Action is an anticipatory suit

12   because W&S seeks declaratory relief. *See* Opp. at 15. As discussed above, ZL's threat of suit was

13   not imminent, and W&S had motive to bring its own breach of contract claim against ZL. *See W.*

14   *Pac. Signal, LLC*, No. 18-CV-02307-LB, 2018 WL 3109809, at *5 (N.D. Cal. June 25, 2018) ("[A]

15   reasonable apprehension that a controversy exists sufficient to satisfy the constitutional

16   requirements for a declaratory judgment action is not equivalent to an imminent threat of litigation.")

17   (internal quotation omitted). ZL's reliance on *Snodgrass* is also misplaced. Opp. at 16 (citing

18   *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998)). In *Snodgrass*,

19   the Ninth Circuit examined "the exercise of discretionary jurisdiction under the Declaratory

20   Judgment Act." *Snodgrass*, 147 F.3d at 1167. The Ninth Circuit did not analyze the applicability of

21   the first-to-file rule. *See id.*

22        Finally, because the Court finds no anticipatory suit, it declines to find forum shopping. *See*

23   *Therapy Stores, Inc. v. JGV Apparel Grp., LLC*, No. 4:16-CV-02588-YGR, 2016 WL 4492583, at

24   *5 (N.D. Cal. 2016) (rejecting claim of forum shopping after finding no anticipatory suit).

25        For the above reasons, the Court finds the Ohio Action is not an anticipatory suit.

26             **2.    Bad Faith**

27        W&S argues that it did not act in bad faith to gain a litigation advantage. Mot. at 13. In

28   response, ZL argues that the Ohio Action "[was] purely motivated by the desire to preempt ZL's

6

1  position as the true plaintiff." Opp. at 17.

2  "Bad faith is evident when the plaintiff in the first action induces the other party to rely, in

3  good faith, on representations made by the plaintiff that it will not file first in order to preempt the

4  other party from filing a suit in its preferred forum." *Therapy Stores,* 2016 WL 4492583, at \*5

5  (internal citations omitted).

6  Here, the record does not show that W&S acted in bad faith. As explained above, W&S had

7  motive to bring a breach of contract claim against ZL based on ZL's alleged breach of the

8  Agreement. The Court is also not persuaded by ZL's argument that W&S acted in bad faith because

9  W&S communicated to ZL that W&S "wished to avoid disagreements" in August 2024 and still

10  filed the Ohio Action first. *See* Opp. at 17. "Filing first to establish tactical advantage" is not

11  sufficient to find bad faith, nor is engaging in "good-faith negotiations" before deciding to file suit.

12  *Therapy Stores,* 2016 WL 4492583, at \*5 (citing *Girafa. com, Inc., v. Alexa Internet, Inc.*, No. C–

13  08–02745 RMW, 2008 WL 4500858, at \*7 (N.D. Cal. 2008) and *Barnes & Noble, Inc. v. LSI Corp.*,

14  823 F. Supp. 2d 980, 991 (N.D. Cal. 2011)).

15  For the above reasons, the Court finds no bad faith by W&S in filing the Ohio Action.

16  **3. Balance of Convenience**

17  ZL also argues that California is convenient for the parties because "California is the venue

18  where the key witnesses reside and where the pertinent contractual acts occurred." Opp. at 18.

19  Factors involving convenience to the parties may also warrant a rejection of the first-to-file rule. *See,*

20  *e.g.*, *Z-Line Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003) (noting that a

21  court may refuse to apply the first-to-file rule if balance of convenience weighs in favor of later-

22  filed action). "However, it is the court with the first-filed action that should normally weigh the

23  balance of convenience and any other factors that might create an exception to the first-to-file

24  rule." *Juniper Networks, Inc. v. Mosaid Techs. Inc.*, No. C 11-6264 PJH, 2012 WL 1029572, at \*2

25  (N.D. Cal. 2012) (citing *Alltrade*, 946 F.2d at 628). The Court notes that ZL's argument is not

26  supported by any evidence regarding convenience of the witnesses. All it provides is the bald

27  assertion of counsel. However, as W&S urges, because the Southern District of Ohio is the first-

28  filed court, this Court defers to the Ohio Court.

7

1                                         \*\*\*

2       For the above reasons, the Court finds that no exception to the first-to-file rule applies.

3       **C. Transfer is Appropriate**

4       Having determined that application of the first-to-file rule is warranted, the court "has

5 discretion to transfer, stay, or dismiss the second case." *Bozic*, 888 F.3d at 1052. Courts generally

6 prefer transfer under the first-to-file rule when, as here, the claims asserted across both the Ohio

7 Action and the California Action are substantially similar, but not identical. Therefore, this case is

8 appropriate for transfer because doing so "avoids placing an unnecessary burden on the federal

9 judiciary, and to avoid the embarrassment of conflicting judgments." *Young v. L'Oreal USA, Inc.*,

10 526 F. Supp. 3d 700, 708 (N.D. Cal. 2021) (internation quotation omitted) (transferring case to the

11 Southern District of New York after finding the first-to-file rule applies).

12 **IV.   ORDER**

13       For the foregoing reasons, the Court GRANTS Defendant's motion to transfer the action to

14 the Southern District of Ohio. Having determined that transfer is appropriate, the Court DENIES

15 Defendant's motion to dismiss or stay the case AS MOOT. The hearing and Case Management

16 Conference currently set on July 23, 2025 are VACATED.

17       The Clerk SHALL transfer this case to the Southern District of Ohio and close the case.

18

19

20 Dated:  July 7, 2025

21                                 _____

                                  BETH LABSON FREEMAN

22                                   United States District Judge

23

24

25

26

27

28

United States District Court
Northern District of California

8